Oh, you're coming right back, huh? Well, we have a new council representing the government. Okay, this is, next up is Singh Randhawa versus Barr. Good morning, Your Honor. It's Ina Lipkin on behalf of the petitioner. This is the second time the court has had the pleasure of reviewing this case. Very briefly, the court had originally denied relief, finding that the applicant Sikh, politically active Sikh from the Punjab, could safely relocate. Thereafter, we filed a motion to reopen, claiming new incidents of harm, and the board had remanded that to the judge. But unfortunately, it has come back to this court again on the issue of the feasibility of relocation. The petitioner contends that neither the IJ the second time around nor the board properly analyzed his individual risk of harm, given the new facts that he had contended in his motion to reopen, the seven arrests of his wife, and what really did amount to a new claim by the police that they now believed he was a terrorist. So we have a new case that has been out. What was that recently? Singh v. Whitaker. Singh v. Whitaker. Does this case differ in any material way from what we held in Singh versus Whitaker? I think they're very similar. I think this case might be stronger in light of the fact that the police specifically recently, as recent as 2013, that's when the motion to reopen was filed, alleged that he now, in their eyes, must be a terrorist. They didn't allege that before, and that wasn't the allegation in Singh versus Whitaker. Given that the police now believe that he might have terrorist links because of his pro-Man views and pro-Kalistani views that they attributed onto him, he really does fit the criteria for the police to seek him out throughout India, given his claim. So Singh makes clear that you have to have a nationwide presumption. Right. Right? But the government can pinpoint not necessarily specific areas, but areas outside of his home area. Right. Well, I'll just say, honestly, that didn't come up. Of course, neither the government nor the Petitioner had the benefit of this decision. Right. So would it make a difference? Let me ask you this. Would it make a difference if this case were to go back to the Board so that they could apply the relocation analysis as we laid out in Singh? I think it would be beneficial to do that, but I want to point out that that might not be necessary, given how this case distinguishes itself from Singh in that he would be on a list of those believed to be terrorists, so that landlord verification identification systems would make him more vulnerable. What evidence in the record is there that he's on a list? It would be his credible testimony. He was found credible initially. That finding had never been questioned. And his documentary evidence, including the affidavit of his wife, who is the one that informed him, the police have now formed this suspicion against him. But you said list, that he's on a list. Well, because in the Department of State report in the government's background documents, there was an argument that the government made that he wouldn't be on a chronic offender list, that the police would then want to seek him out if he did relocate and his name popped up after an identification check. That's pretty speculative, isn't it? Well, Your Honor, his credible testimony established that he would indeed have a high probability. You know, INSV Cardozo-Fonseca, he need only show a 10% probability that he would be on a list. What testimony is, where is that in the record? What page are you referring to for this testimony that is credible testimony that he would be on a list that the police could use to track him anywhere in the country? Well, he had testified that due to landlord identification, landlord-tenant identification requirements, that he fears that he would be on that list. Well, but that's speculative. That's the difficulty I'm having is it's speculative that he fears he would be on the list. That's not specific enough. I believe he stated that the Indian government started issuing IDs, and that's at the record at 99 on the same page that he understood that a good majority of or a good percentage of Indian nationals were now issued these sort of national IDs. And therefore, at page 98, due to this national identification system, he fears that the police would be more readily inclined and able to locate him. And that's at page 98. Well, that's a little bit different than what you were arguing. You stood up there and said he's on a list. You don't know that he's on a list, and there's no evidence that he's on a list. Well, he says at page 97 that the police have characterized him as a terrorist. Well, that's something that's different. But then he explains why that's relevant. He says, I'm a terrorist. I'm threatened to be a terrorist if I'm located. So when I read this case and then read Singh v. Whittaker, and then we have a follow-up to Singh v. Whittaker, another Singh case, which is not a published opinion, it's a mem dispo, very recent, where the panel in that case just said that in light of Singh, the second Singh case had to go back for further work. And my question was, doesn't this fit within that? I believe it could fit within that, and I think that it would be useful if the board would review it upon remand. However, I'm also saying that the petitioner during testimony is not required to make the legal arguments. He gave the facts on review. If the court would look at the legal arguments in the briefing, then those dots are connected. Counsel, what do we do with the fact that the record reflects that the petitioner was able to live safely with his family in Mumbai for more than a year? What do we do with that? Isn't that different than the Singh v. Whittaker case, where we actually have in the record where he was able to live safely in another part of the country? But the caveat to that was he testified that he was unable to get any employment, and one of the reasons was because he feared giving his ID, and he feared that his whereabouts would become known to the police, so he wasn't able to live fully and openly with freedom. And even if he was able, even if the court would find that, no, he was able to, the facts changed when his wife started getting arrested. Was she in Mumbai when she was getting arrested? No, she had returned to their ancestral home in Punjab. I might save the last couple of questions. All right. Good morning, Your Honors. May it please the Court, Linda Chang on behalf of the U.S. Attorney General. This is the second time that this case is before the Court. Previously, the Court had found that DHS rebutted the presumption of well-founded fear with evidence of safe and reasonable relocation outside of Punjab. The limited issue on remand before the IJ was whether DHS again rebutted the presumption, and here it did. Therefore, the petitioner did not qualify for asylum withholding of removal. Additionally, substantial evidence supports it. Also, you're reading very fast. I'm sorry. If you could just talk to us instead of reading to us, it would be a lot more helpful. I'm sorry. Well, my obvious concern was why isn't this case controlled by Singh? That would be my next point. So this case is actually very distinguishable from Singh v. Whitaker, the published case. Tell me how. In that case, this Court found that the Board failed to consider the reasonableness of relocation in light of his continued political views and expressions thereof. Therefore, that analysis did not account for any persecution that would be on account of his political activities. Here, petitioner has mischaracterized his political activism. He never was a member of ADM. He states that he was a supporter, but he did not do anything politically with them. Therefore, it goes to the other point of how. There is credible testimony that he was helping or assisting his friends who were active in the party. There's testimony that he was friends with these two pro-Singh. Well, that was the whole reason why they were after him. That is correct, and that is the only reason why the local police were after him. And so. His role in that, what he was doing in that capacity didn't strike me as materially different than what Mr. Singh as a member, Mr. Singh in the other case, the published case, as a member was doing in that case. Actually, it's very distinguishable because here, petitioner never said that he was politically active with his two friends. He states that they were friends for a long time. There was no specific testimony that they did anything politically active together versus Singh, saying that he did have these views and he would intend to continue acting on those views if he returned to India. Therefore, the petitioner's case is very different from Singh. There is no analysis that was lacking in terms of his future persecution outside of Punjab. What do we do with the notion that there should be a Singh, a recent Singh opinion says that there's a presumption, a nationwide presumption. I'm sorry. That he can't relocate. In Singh. Yes. That, so, right. That wasn't applied, that was not, that presumption wasn't applied here. The presumption was actually rebutted here by DHS in presenting evidence that because petitioner is not a high profile militant, the police outside of the local Punjab area would not be interested in him. There is no evidence that central authorities would be seeking him. He is not on a list. The fact that his wife has been arrested is unfortunate, but that is only with the local police and it is evidence that they may still be interested. Again, relocation outside of Punjab is still safe and reasonable for him based on the evidence that DHS presented here. Additionally, in response to the tenant registration, he, sorry, the evidence shows that this is only meant to target dangerous terrorists. Again, illegal migrants or professional criminals, gang members of that sort. It is not just a policing generally of Sikhs. And with regard to the identification card that is in use, there is no evidence that police use it to locate people or that they would have access to the database across the states outside of Punjab. Furthermore, the evidence shows that it would be safe and reasonable for petitioner to relocate outside of Punjab and that he did not show that it was more likely than not that he would be tortured in India. Again, it was not an abuse of discretion for the agency to deny humanitarian asylum where petitioner did not show compelling reason that he is unable to return to India. For the reasons stated today and in our brief, we would ask the court to deny the petition for review unless you have any other further questions. What about the, you had another claim. Was it humanitarian asylum? Yes. Would you address that for just a moment? Yes. Petitioner did not show that there was any compelling reason that he would be unable to return or the possibility of any other serious harm. The harm that he had experienced. Doesn't the regulation encompass family members as well? Yes, it does. So what do we do with what happened to his wife? So his wife has been arrested seven times and There was allegations that she would have been raped by the police. Yes, this is true. And so this was all taken into consideration and yet it does not meet the very high standard of humanitarian asylum in the absence of well-founded fear. There have been other cases where this court has granted humanitarian asylum and it does not match that level of persecution or the atrocious form of harm that those petitioners were subjected to. Declare that they considered the fact that his wife had been raped? We presume that the agency did consider that even if it did not explicitly state it. So the standard is extremely severe persecution for humanitarian asylum. The two ways that we can look at it is whether they've demonstrated a compelling reason for being unable or unwilling to return to the country because of the severity of the past persecution he himself experienced or just a reasonable possibility that he can suffer other serious harm upon removal to that country. But in saying we characterized it as extremely severe persecution, didn't we? Or did we not? Yes, yes. And with respect to what he himself experienced, it was two arrests and detentions where he was beaten and had to pay a fine to be released, which is no greater than many other cases where petitioners do not even show past persecution. If Your Honors don't have any other questions. I have one question I want to understand. Make sure I understand your argument on the rebuttable presumption now that the threat exists nationwide. When I read through this, my sense was that the board did not consider that rebuttable presumption or didn't recognize it at all, but I think I heard you say that your position is that it was rebutted here, successfully rebutted. Yes, that's correct, because we presume that petitioner was found credible and had demonstrated past persecution, so then it was upon DHS to rebut the presumption of well-founded fear. It may not have been explicitly stated, but that is the process that was analyzed and used here, and DHS presented sufficient evidence rebutting that. All right, thanks. Neither the board, though, nor the IJ had the benefit of our recent opinion, which really explains how this relocation analysis is supposed to be conducted. You mean in Singh v. Whitaker? Yes. While the timing is true, there is nothing deficient in either of the board or the IJ's decision here, because, again, the distinction was whether the analysis in Singh was incomplete due to the failure to consider his future political activism and association in India. We have the same thing here. Petitioner has not alleged that he was politically active as a member. He said he was a supporter, but then he did not provide any other details about his actual involvement with ADM, and he has not alleged that he would return and somehow become one. Well, what do we do with all the credible testimony that the police were after him because of his support of a colleague, Akal Dalai Lama? Was that the same testimony that was in the first petition that we rejected already? Yes, that is true. But he's always been found credible. Yes, he was found credible. And the police in the local Punjab were the ones that arrested him and continue to question his wife and, therefore, reasonableness of the relocation outside of Punjab is true. All right. Anything further? No. For the reasons stated in our briefing today, we ask the court to deny the petition for review. Thanks. I was going to give you a minute, but if you don't want to, that's fine. Okay. Matter is submitted.
judges: Paez, Rawlinson, Anello